```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

YASMIN D., an infant,               :
by her mother and natural
guardian Renee Dunbar, et al.,      :     14 Civ. 7131 (JGK)(HBP)

                    Plaintiffs,     :     REPORT AND
                                          RECOMMENDATION
     -against-                      :

THE CITY OF NEW YORK, et al.,       :

                    Defendants.     :

----------------------------------X
```

          PITMAN, United States Magistrate Judge:

          TO THE HONORABLE JOHN G. KOELTL, United States District

Judge,


I.  Introduction

          By Notice of Motion dated January 18, 2016 (Docket Item

("D.I.") 44), all parties other than Colette Robertson, who is in

default, move for the approval of a settlement agreement resolv-

ing the claims of the three infant plaintiffs.  For the reasons

set forth below, I respectfully recommend that the motion be

granted and that the settlement be approved.

II.  <u>Facts</u>

    A.  Facts Giving Rise
       <u>to Plaintiffs' Claims</u>

       Plaintiff Renee Dunbar is the mother of three minor children, Yasmin D., Yamara T. and Yolinda T.  As a result of an Order issued by the New York City Family Court, an employee of the Children's Aid Society -- Colette Robertson -- was placed in Ms. Dunbar's home to assist Ms. Dunbar with parenting skills. Unbeknownst to Ms. Dunbar, Robertson abused this position of trust to take numerous photographs of Ms. Dunbar's three minor daughters in various states of undress.  Robertson subsequently shared the photographs with her boyfriend, Alberto Yard, a former state court officer.  There is no evidence in the record that the photographs were posted on the internet or otherwise disseminated beyond Robertson and Yard.  The criminal conduct of Robertson and Yard came to Ms. Dunbar's attention in July 2013 when agents of the Federal Bureau of Investigation advised her of the investigation of Robertson and Yard and the charges that were being brought against them.  Prior to that time, neither Ms. Dunbar nor her children were aware that the photographs had been taken. There is no evidence that any of the children ever saw the photographs.

In August 2013, a grand jury sitting in the United States District Court for the Eastern District of New York indicted Robertson and Yard, charging them with multiple counts of sexual exploitation of a child, attempted sexual exploitation of a child, conspiracy to sexually exploit a child and possession of child pornography.  Both plead guilty to some of the charges against them.  In the course of her plea allocution, Robertson admitted to using her cellphone to take photographs of Ms. Dunbar's children in states of undress and subsequently giving the phone to Yard.  Robertson and Yard were sentenced to 25- and 27-year terms of imprisonment, respectively (John Marzulli, Former Brooklyn Court Officer Gets 27 Years in Prison for Sexually Exploiting at Least 18 Kids for Child Porn, Daily News (Feb. 4, 2016, 6:00 PM), http://www.nydailynews.com/new--york/nyc-crime/ex-brooklyn-court-officer-27-years-child-porn-article-1.2520652?utm_source=feedburner&utm_medium=feed&utm_campaign=Feed%3A+NydnRss+%28Top+Stories+-+NY+Daily+News%29).

Ms. Dunbar commenced this action in September 2014, seeking damages for the violation of her and her daughters' civil rights.  Specifically, plaintiff alleges that Robertson and Yard's conduct violated plaintiffs' rights under the Fourth, Fifth, Eighth and Fourteenth Amendments.  The claims against the City, the Children's Aid Society and their employees are based on

3

the theory that they failed to investigate, train and supervise Robertson properly.

B.   The Parties'
     Proposed Settlement

In March, 2015, the Honorable John G. Koeltl, United States District Judge, referred this matter to the Court's mediation program and all parties, other than Robertson,[1] were able to reach a settlement through the mediation and subsequent discussions.  The proposed settlement provides for a payment of $65,000 on behalf of all defendants other than Robertson and Yard and a payment of $21,000 on behalf of Yard.  The proposed settlement further provides that after the deduction of the costs of the litigation -- $3,013.71 -- the net settlement proceeds of $82,986.29 are to be distributed among the plaintiffs and their counsel as follows:

| | | |
|---|---|---|
| Plaintiffs' Counsel | $27,662.10 | (1/3 of net settlement proceeds) |

---

[1]Robertson has not answered or appeared in this action and appears to be in default.

| | | |
|---|---|---|
| Renee Dunbar | $ 8,699.73 | (15.725%[2] of net settlement proceeds after the deduction of attorneys' fees) |
| Yolinda T. | $20,926.37 | (37.825% of net settlement proceeds after the deduction of attorneys' fees) |
| Yasmin D. | $12,849.04 | (23.225% of net settlement proceeds after the deduction of attorneys' fees) |
| Yamara T. | $12,849.04 | (23.225% of net settlement proceeds after the deduction of attorneys' fees) |

A larger share of the net settlement proceeds is allocated to Yolinda T. because she learned that the photographs had been made during the course of an examination of her conducted pursuant to New York General Municipal Law Section 50-h. The evidence in the record indicates that she is the only one of the infant plaintiffs who is aware that the photographs were taken.

---

[2]The percentages of the shares allocated to each of the four plaintiffs in the parties' submissions equal 99.9% of the net settlement proceeds after the deduction of legal fees.  This error would have left $55.32 of the settlement fund unallocated. In order to allocate 100% of the settlement proceeds, I have added 0.025% to each of the plaintiffs' allocable shares and adjusted the dollar figure allocable to each plaintiff accordingly.

The proposed settlement further provides that the shares allocable to each of the infant plaintiffs are to be deposited and held in interest bearing account at TD Bank until each daughter reaches the age of 18.

The parties initially moved for approval of the proposed settlement on January 18, 2016. After reviewing the submissions made at that time, I concluded that I needed additional information concerning the proposed settlement and directed the parties to make a supplemental submission (see Order dated May 11, 2016, D.I. 49). Because of the sensitive nature of the subjects addressed in the supplemental submission, I permitted counsel to make the submission directly to my chambers instead of filing it on the public docket (see Endorsed Order dated May 27, 2016, D.I. 51).

III.  Analysis

   A.  Standards Applicable to
       an Infant Compromise

In determining whether an infant compromise should be approved, "the Court's role is to 'exercise the most jealous care that no injustice be done' to the infant." Southerland v. City of New York, CV-99-3329 (CPS), 2006 WL 2224432 at *2 (E.D.N.Y. Aug. 2, 2006), quoting Anderson v. Sam Airlines, 94 Civ. 1935,

6

1997 WL 1179955 (E.D.N.Y. Apr. 25, 1997).  In this district,
Local Rule 83.2(a)(1) requires that

> [a]n action by or on behalf of an infant or incompetent
> shall not be settled or compromised . . . without leave
> of the Court embodied in an order, judgment or decree.
> The proceeding upon an application to settle or compro-
> mise such an action shall conform, as nearly as may be,
> to the New York State statutes and rules, but the
> Court, for cause shown, may dispense with any New York
> State requirement.

Consistent with the applicable New York State statutes
and rules, the analysis in this jurisdiction centers on "whether:
(1) the best interests of the infant are protected by the terms
and conditions of the proposed settlement; and (2) the proposed
settlement, including any legal fees and expenses to be paid, as
part of the proposal, are fair and reasonable." Martegani v.
Cirrus Design Corp., 687 F. Supp. 2d 373, 377 (S.D.N.Y. 2010)
(Fox, M.J.), citing Local Civ. R. 83.2(a); N.Y. Jud. L. § 474;
N.Y. C.P.L.R. §§ 1205-08; see also Edionwe v. Hussain, 7 A.D.3d
751, 753, 777 N.Y.S.2d 520, 522 (2d Dep't 2004) (required analy-
sis is whether settlement is "fair and reasonable and in the
infant plaintiff's best interests").  "There is no bright-line
test for concluding that a particular settlement is fair." Sch.
for Language & Commc'n Dev. v. New York State Dep't of Educ., No.
02-CV-0269 (JS)(JO), 2010 WL 1740416 at *2 (E.D.N.Y. Apr. 7,
2010) (Report & Recommendation), adopted at 2010 WL 1752183

(E.D.N.Y. Apr. 28, 2010), citing Newman v. Stein, 464 F.2d 689, 692-93 (2d Cir. 1972). Moreover, the Court of Appeals for the Second Circuit has noted that "Rule 83.2 is hardly a rigid obligation imposed on district courts." Neilson v. Colgate-Palmolive Co., 199 F.3d 642, 655 (2d Cir. 1999). Stated another way, "[d]istrict courts have broad discretion when conducting an infant compromise hearing." Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 89 (2d Cir. 2010).

Despite this broad discretion, a court cannot approve a proposed infant compromise unless it is "fair, reasonable, and adequate," based on a comparison of "the terms of the compromise with the likely rewards of litigation." Neilson v. Colgate-Palmolive Co., supra, 199 F.3d at 654, quoting Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1079 (2d Cir. 1995) (internal quotation marks omitted). In making this determina-tion, the court should "'form an educated estimate of the com-plexity, expense, and likely duration of such litigation . . . and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.'" Martegani v. Cirrus Design Corp., supra, 687 F. Supp. 2d at 377, quoting Newman v. Stein, supra, 464 F.2d at 692 (alteration in original; citation omitted). These other factors include

8

> (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing
> liability; (5) the risks of establishing damages; . . .
> (7) the ability of the defendants to withstand a
> greater judgment; (8) the range of reasonableness of
> the settlement fund in light of the best possible
> recovery; [and] (9) the range of reasonableness of the
> settlement fund to a possible recovery in light of all
> the attendant risks of litigation.

Allstate Ins. Co. v. Williams, No. 04 CV 4575 (CLP), 2006 WL
2711538 at *2 (E.D.N.Y. Sept. 21, 2006) (alterations in origi-
nal), quoting City of Detroit v. Grinnell Corp., 495 F.2d 448,
463 (2d Cir. 1974).  In evaluating the fairness of a proposed
settlement, a court is not required to "decide the merits of the
case or resolve unsettled legal questions." Carson v. Am.
Brands, Inc., 450 U.S. 79, 88 n.14 (1981); Sch. for Language &
Commc'n Dev. v. New York State Dep't of Educ., supra, 2010 WL
1740416 at *3; In re McDonnell Douglas Equip. Leasing Sec.
Litig., 838 F. Supp. 729, 739 (S.D.N.Y. 1993) (Cannella, D.J.).

A settlement is presumptively fair and reasonable if
"'(i) the settlement is not collusive but was reached after arm's
length negotiation; (ii) the proponents have counsel experienced
in similar cases; [and] (iii) there has been sufficient discovery
to enable counsel to act intelligently . . . .'" Baez v. City of
New York, No. 09-CV-2635 (RRM)(JO), 2010 WL 1992537 at *2
(E.D.N.Y. Apr. 21, 2010) (Report & Recommendation) (alterations
in original), adopted at 2010 WL 1991521 (E.D.N.Y. May 17, 2010),

quoting Ross v. A.H. Robins Co., 700 F. Supp. 682, 683 (S.D.N.Y. 1988) (Motley, D.J.).  Additionally, a settlement negotiated by the natural guardian of an infant is presumptively fair and in the best interests of the child.  Sch. for Language & Commc'n Dev. v. New York State Dep't of Educ., supra, 2010 WL 1740416 at *3, citing Sabater v. Lead Indus. Ass'n, 00-CV-8026 (LMM), 2001 WL 1111505 at *3-*4 (S.D.N.Y. Sept. 21, 2001) (McKenna, D.J.) and Stahl v. Rhee, 220 A.D.2d 39, 46, 643 N.Y.S.2d 148, 153 (2d Dep't 1996).

    B.  Fairness of the Settlement
        to the Infant Plaintiffs

        My Order dated May 11, 2016 directed the parties to address 8 specific issues relevant to the assessing the fairness of the proposed settlement:  (1) the nature of the alleged misconduct involved, i.e., was the conduct limited to surreptitious photography or was more invasive conduct involved; (2) whether any photographs were disseminated over the internet, through publications or by other means; (3) why Yolanda T. was being allocated a greater share of the settlement proceeds than the other infants plaintiffs; (4) whether any of the infant plaintiffs has been examined by a mental health professional to assess the likelihood of long-term sequelae; (5) if no such

10

examination has been conducted, an explanation of why it was not conducted; (6) the stage of the proceedings at which settlement was reached and whether any discovery had been conducted as of the date the settlement was reached; (7) a description of the issues with respect to both liability and damages that each side would face if the matter proceeded to trial and (8) how the settlement compares to other verdicts or settlements involving similar conduct (D.I. 49).  The information provided by the parties, as discussed below, demonstrates that each of these factors indicates that the proposed settlement is reasonable as to the infant plaintiffs.

First, because much of Robertson's conduct was carried out surreptitiously and without the knowledge of the of the plaintiffs or other defendants, most of the details of her conduct are unknown to the other parties.  Although Ms. Dunbar was shown a handful of photographs by FBI agents, she has no knowledge of the number or nature of the remainder of the photographs.  In addition, as noted above, Yolinda T. learned of the existence of the photographs during her 50-h examination, but did not actually see the photographs.  However, as was also noted above, there is no evidence that the photographs were viewed by anyone other than Robertson and Yard, and there is no evidence of dissemination over the internet or otherwise.  Thus, although the

conduct of Robertson and Yard is unquestionably  abhorrent, it did not involve trafficking in pornographic images.

        With respect to the structure of the settlement, the settlement proceeds are being divided rationally.  The largest share of the settlement, after attorneys' fees, is being allocated to Yolinda T. because she is the only infant plaintiff who is aware that the images were taken; the remaining two infant plaintiffs, who have no awareness of the photographs are being awarded equal shares.  No psychological treatment or counseling has been provided for any of the infant plaintiffs, although Yolinda T. has reported feelings of depression to her mother.  It appears that Ms. Dunbar is currently attempting to get approval from her insurer for Yolinda T. to see a psychologist.  There is nothing in the record suggesting that any of the other infant plaintiffs have exhibited any signs of psychological trauma.

        Although the matter was settled very early in the proceedings and before plenary discovery, there was good reason for a prompt settlement.  Judge Koeltl referred the parties to mediation after the initial pretrial conference, and the only discovery that has been provided are the disclosures required by Fed.R.Civ.P. 26(a)(1).  One of plaintiffs' principal reasons for agreeing to an early settlement was to spare the infant plain-

tiffs the trauma of being deposed concerning the repugnant events
that give rise to their claims.  This was a valid reason for an
early settlement.  Although depositions might have yielded more
information concerning Robertson and Yard's misconduct, it would
have come at the price of confronting the infant plaintiffs with
traumatic facts and graphic images.  See Bland v. City of New
York, 14 Civ. 5398 (AT)(DCF), 2016 WL 3443584 at *3 (S.D.N.Y.
June 1, 2016) (Torres, D.J.); Orlander v. McKnight, 12 Civ. 474
(HBP), 2013 WL 4400537 at *5 (S.D.N.Y. Aug. 15, 2013) (Pitman,
M.J.).

        To the extent that plaintiffs' claims are asserted
against parties other than Yard and Robertson, there are also
significant legal obstacles to plaintiffs' recovery.  Plaintiffs
cannot proceed on a respondeat superior theory with respect to
their claims under 42 U.S.C. § 983 claims, Monell v. Dep't of
Social Servs., 436 U.S. 658, 694 n.58 (1978); Wright v. Smith, 21
F.3d 496, 501 (2d Cir. 1994), nor can their Section 1983 claims
be predicated on negligence.  County of Sacramento v. Lewis, 523
U.S. 833, 849 (1998) ("[L]iability for negligently inflicted harm
is categorically beneath the threshold of constitutional due
process."); Kruzel v. County of Suffolk, 23 F. App'x 95, 96 (2d
Cir. 2002); Hayes v. New York City Dep't of Corr., 84 F.3d 614,
620 (2d Cir. 1996).  Although experience teaches that almost

anything is possible, it seems unlikely that City officials would place an individual in a home with minor children if they had actual knowledge or reason to believe that the individual had a history of or an interest in creating child pornography.

Similar hurdles confront plaintiffs' common law claims against the defendants other than Robertson and Yard.  In other contexts, sexual misconduct by an employee has routinely been held to be outside the scope of his employment and, therefore, inadequate to sustain a vicarious liability claim on the theory of respondeat superior.  "New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context."  Ross v. Mitsui Fudosan, Inc., 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998) (Leisure, D.J.); accord Doe v. Alsaud, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014) (Sweet, D.J.); see Wilson v. Diocese of New York of Episco-pal Church, 96 Civ. 2400 (JGK), 1998 WL 82921 at *5 (S.D.N.Y. Feb. 26, 1998) (Koeltl, D.J.), citing Joshua S. v. Casey, 206 A.D.2d 839, 615 N.Y.S.2d 200, 201 (4th Dep't 1994).

Finally, although neither counsels' research nor my own has found verdicts or settlements in comparable cases, the restitution awards in several criminal child pornography cases offer a rough analog.  In a number of simple possession cases not

involving the creation or dissemination of child pornography, courts have entered restitution awards of $1,500 to $6,000 in favor of the individuals depicted in the pornographic images. See Bradley P. Reiss, Restitution Devolution?, 85 St. John's L. Rev. 1621, 1634 & n.99 (2011), citing, inter alia, United States v. Brunner, No. 5:08cr16, 2010 WL 148433 at *4 (W.D.N.C. Jan. 12, 2010) ($6,000 for one victim and $1,500 for another victim), aff'd, 393 F. App'x 76 (4th Cir. 2010) (per curiam); United States v. Brown, No. CR 08-01435-RGK, 2009 U.S. Dist. LEXIS 113942 at *1 (C.D. Cal. Oct. 5, 2009) ($5,000); United States v. Renga, No. 1:08-CR-0270 AWI, 2009 WL 2579103 at *6 (E.D. Cal. Aug. 19, 2009) ($3,000); United States v. Ferenci, No. 1:08-CR-0414 AWI, 2009 WL 2579102 at *5 (E.D. Cal. Aug. 19, 2009) ($3,000); United States v. Monk, No. 1:08-CR-0365 AWI, 2009 WL 2567831 at *5 (E.D. Cal. Aug. 18, 2009) ($3,000 for each of the two victims).  The figures that will be received by the infant plaintiffs here are two to three times the upper end of that range.  Although some other criminal cases have awarded much higher sums as restitution, the  foregoing cases demonstrate that the settlement proposed here is reasonable.

On the basis of all the foregoing factors, I conclude that the amounts to be received by the infant plaintiffs was reached though a rational process and the that the sums the

15

infant plaintiffs will receive is reasonable.  I, therefore, recommend that the settlement be approved with respect to the amounts to be paid to the infant plaintiffs.

C.  Counsel's Fee Request

"When approving an infant's compromise, the court [also] has an obligation to approve the reasonableness of attorney's fees."  Sanchez v. MTV Networks, 10 Civ. 7854 (TPG), 2012 WL 2094047 at *2 (S.D.N.Y. June 11, 2012) (Griesa, D.J.).  The inquiry should center on whether there was "'suitable compensation for the attorney for his service . . . [on] behalf of the . . . infant.'"  Baez v. City of New York, supra, 2010 WL 1992537 at *3 (alterations in original), quoting Allstate Ins. Co. v. Williams, supra, 2006 WL 2711538 at *4.  An infant plaintiff's guardian's agreement to a proposed attorney fee is not determinative because "in the last analysis the amount of the fee must be fixed by the court and any agreement of the guardian is advisory only."  Werner v. Levine, 52 Misc. 2d 653, 654-55, 276 N.Y.S.2d 269, 271 (Sup. Ct. Nassau Co. 1967); see also Baez v. City of New York, supra, 2010 WL 1992537 at *3 (agreements on fees "serve only to guide the court in making a determination committed to its sound discretion"), citing Allstate Ins. Co. v. Williams, supra, 2006 WL 2711538 at *4); accord D.J. ex rel. Roberts v.

16

City of New York, 11 Civ. 5458 (JGK)(DF), 2012 WL 5431034 at *3 (S.D.N.Y. Oct. 16, 2012) (Freeman, M.J.) (Report & Recommendation), adopted at 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012) (Koeltl, D.J.); Orlandi v. Navistar Leasing Co., 09 Civ. 4855 (THK), 2011 WL 3874870 at *4 (S.D.N.Y. Sept. 2, 2011) (Katz, M.J.); Stephen v. Target Corp., No. CV-08-338 (CPS)(JG), 2009 WL 367623 at *3 (E.D.N.Y. Feb. 12, 2009) (adopting Report & Recommendation).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 186 (2d Cir. 2008), quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

The hourly rates used in making a fee award should be "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, supra, 522 F.3d at 184.  This rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984); accord Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006).  In determining a reasonable hourly rate, the court

17

should not only consider the rates approved in other cases in the District, but should also consider any evidence offered by the parties.  Farbotko v. Clinton Cnty., 433 F.3d 204, 208-09 (2d Cir. 2005).  The Court is also free to rely on its own familiarity with prevailing rates in the District.  A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ., 407 F.3d 65, 82-83 (2d Cir. 2005); Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987).

In all cases, "the fee applicant has the burden of showing by 'satisfactory evidence -- in addition to the attorney's own affidavits' -- that the requested hourly rates are the prevailing market rates."  Farbotko v. Clinton Cnty., supra, 433 F.3d at 209, quoting Blum v. Stevenson, supra, 465 U.S. at 896 n.11.

An attorney seeking fees must maintain and submit time records "from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept the court should not award the full amount requested."  Martegani v. Cirrus Design Corp., supra, 687 F. Supp. 2d at 378, quoting Monaghan v. SZS 33 Assocs., L.P., 154 F.R.D. 78, 83-84 (S.D.N.Y. 1994) (Sweet, D.J.) (internal quotation marks omitted). Similarly, "[w]here an attorney fails to provide suitable docu-

18

mentation to substantiate the costs incurred, a court may decline to award any costs."  Mateo v. United States, 06 Civ. 2647 (KNF), 2008 WL 3166974 at *5 (S.D.N.Y. Aug. 6, 2008) (Fox, M.J.), citing Lide v. Abbott House, 05 Civ. 3790 (SAS), 2008 WL 495304 at *2 (S.D.N.Y. Feb. 25, 2008) (Scheindlin, D.J.).

Six attorneys worked on the matter on behalf of plaintiffs.  Their hours and rates are as follows:

| Name | Year Admitted | Rate | Hours |
|------|---------------|------|-------|
| Steven Harfenist[3] | N/A | $450 | 0.3 |
| Charles Horn[4] | 1997 | $325 | 4.9 |
| Charles Horn | 1997 | $350 | 20.9 |
| Hilary Chernin | N/A | $350 | 3.1 |
| Neil Torczyner | 1996 | $325 | 7.5 |
| Neil Torczyner | 1996 | $350 | 44.1 |
| TOTAL | | | 80.8 |

(Declaration of Neil Torczyner, dated January 18, 2016, D.I. 45 ("Torczyner Decl."), ¶ 26).

I have reviewed the contemporaneous time records submitted by plaintiffs' counsel and the hours claimed are

---

[3]Although counsel has not submitted any information concerning the experience of Mr. Harfenist and Ms. Chernin, they performed a total of only 3.4 hours of work on the matter.

[4]The hourly rates of Messrs. Horn and Torczyner increased during the period in which they represented plaintiffs.

reasonable.[5]  Given the experience of the attorneys who did the vast majority of the work on this matter, the hourly rates are also reasonable.

The foregoing rates and hours yields a lodestar figure of $28,000.00.

The fees counsel are actually seeking are based on the retainer agreement Ms. Dunbar executed on August 1, 2013 (Torczyner Decl., Ex. B).  With respect to fees, the retainer agreement provides that plaintiffs' counsel will receive one-third of any settlement or verdict (Torczyner Decl. Ex. B at 1).  Because the retainer agreement relates to counsel's representa-tion of all the plaintiffs and that portion of the fee allocable to the representation of the Ms. Dunbar does not require judicial approval, there can be no debate that counsel are entitled to at least $4,349.87, i.e., one third of the portion of the settlement

---

[5]Although the copes of the time records filed with the Clerk of the Court have been redacted to remove the descriptions of the services provided (D.I. 52), counsel has provided unredacted copies to my chambers.

that is allocable to Ms. Dunbar.[6]  Thus, the issue before me is

what portion of $69,936.69 counsel should receive as a fee.[7]

          The proposed settlement allocates $23,272.23 of the

$69,936.69 to counsel fees and $46,624.45 to the infant plain-

tiffs or 33.3% to counsel fees and 66.7% to the infant plain-

tiffs.  One-third contingent fee arrangements, such as this, are

routinely approved in this Circuit.  As the Honorable Analisa

Torres, United States District Judge, has recently noted:

> [C]ontingency awards of one-third of the plaintiff's
> recovery are common in similar cases in this jurisdic-
> tion.  See Orlander, 2013 WL 4400537, at *8 (noting
> that one-third contingency fees are "usual and custom-
> ary" and have been "routinely approved"); Rodney v.
> City of New York, No. 13 Civ. 6179, 2015 WL 1014165, at
> *6 (E.D.N.Y. Mar. 6, 2015) ("New York courts have
> generally approved payments that are one-third contin-

_____

    [6]The total settlement amount, after costs are deducted
amount is $82,986.29.  $8,699.73 of this amount is being paid to
Ms. Dunbar.  In light of the one-third contingency fee agreement,
$8,699.73 represents two-thirds of the portion of the total
settlement amount allocable to Ms. Dunbar, i.e., the amount of
the total settlement that is allocable to Ms. Dunbar's recovery
and the attendant legal fees, is actually 1.5 times the amount of
her actual recovery, one-third of which is constitutes counsel's
fee and two-thirds of which is Ms. Dunbar's recovery.  1.5 times
$8,699.73 is $13,049.60.  Accordingly, the issue that remains is
what portion of the remaining $69,936.69 (the total settlement
amount ($82,986.29) less Ms. Dunbar's allocable share
($13,049.60)) should be allocated as attorneys' fees with respect
to the infant plaintiffs' claims.

    [7]Counsel seeks a total fee of $27,622.10.  $4,349.87 is
allocable to the services performed in connection with Ms.
Dunbar's claim.  Accordingly, the remainder -- $23,272.23 -  is
allocable to the services performed in connection with the infant
plaintiffs' claims.

gency arrangements in infant compromises.") (adopting report and recommendation).

Bland v. City of New York, 14 Civ. 5398 (AT)(DCF), 2016 WL 3443584 at *5 (S.D.N.Y. June 1, 2016); accord Smalls v. The City of New York, CV-15-05672 (ST), 2016 WL 3620764 at *2 (E.D.N.Y. June 29, 2016); S.W. v. The City of New York, 09 Civ. 1777 (ENV)(MDG), 2012 WL 6625879 at *2 (E.D.N.Y. Dec. 19, 2012) (collecting cases).

In addition the close relationship between the one-third contingency fee -- $27,662.10 -- and the lodestar figure -- $28,000.00 -- is further confirmation of the reasonableness of the fees sought under the proposed settlement agreement.

Thus, I also recommend that the fee sought by plaintiffs' counsel be approved.

## IV.  Conclusion

Accordingly, for all the foregoing reasons, I respectfully recommend that the proposed settlement of plaintiffs' claims, including a fee award to counsel of $27,662.10, be approved.

V.   **OBJECTIONS**

         Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of
the Federal Rules of Civil Procedure, the parties shall have
fourteen (14) days from receipt of this Report to file written
objections.  See also Fed. R. Civ. P. 6(a).  Such objections (and
responses thereto) shall be filed with the Clerk of the Court,
with courtesy copies delivered to the Chambers of the Honorable
John G. Koeltl, United States District Judge, 500 Pearl Street,
Room 1030, New York, New York 10007, and to the Chambers of the
undersigned, 500 Pearl Street, Room 750, New York, New York
10007.  Any requests for an extension of time for filing objec-
tions must be directed to Judge Koeltl.  FAILURE TO OBJECT WITHIN
FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL**
PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140, 155
(1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir.
1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054
(2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

23

1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir.

1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:    New York, New York
          August 22, 2016

                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

Steven J. Harfenist, Esq.
Neil S. Torczyner, Esq.
Harfenist, Kraut & Perlstein LLP
3000 Marcus Avenue
Lake Success, New York   11042

Lesley B. Mbaye, Esq.
Assistant Corporation Counsel
City of New York
Room 4-114
100 Church Street
New York, New York   10007

Suzanne M. Halbardier, Esq.
Barry, McTiernan & Moore, LLP
2 Rector Street
New York, New York   10006

Deveraux L. Cannick, Esq.
Aiello & Cannick
69-06 Grand Avenue
Maspeth, New York   11378